IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BETTY HAWKINS §
§
Plaintiff, §
§
VS. § NO. 3-09-CV-2094-BD
§
MICHAEL J. ASTRUE, §
Commissioner of Social Security §
§
Defendant. §

**MEMORANDUM OPINION AND ORDER**

Plaintiff Betty Hawkins seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including diabetes, loss of vision, asthma, headaches, arthritis, and Hepatitis C. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on January 13, 2009. At the time of the hearing, plaintiff was 53 years old. She has a high school equivalency diploma and past work experience as a housekeeper. Plaintiff has not engaged in substantial gainful activity since July 11, 2007.

The ALJ found that plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that plaintiff suffered from diabetes mellitus, depression, and status post cervical diskectomy, the judge concluded that the severity of those impairments did

not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform her past relevant work as a housekeeper. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three broad grounds for relief, plaintiff contends that: (1) the ALJ misapplied the social security regulations in determining that she failed to follow prescribed treatment; (2) the ALJ did not properly consider the severity of her physical impairments; and (3) the ALJ improperly rejected the opinions of her treating and consulting medical sources.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected

to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

> 1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.
>
> 3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.
>
> 4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first challenges the finding that she "has not been entirely compliant in taking prescribed medications." (*See* Tr. at 21). Under the social security regulations, a claimant "must follow treatment prescribed by your physician if this treatment can restore your ability to work[.]" 20 C.F.R. § 416.930(a). The failure to follow a prescribed course of treatment "without a good reason" precludes a finding of disability. *Id.* § 416.930(b); *see also id.* § 404.1530(b). The ALJ must develop the record to determine whether the claimant justifiably failed to undergo the treatment prescribed. *See* SSR 82-59, 1982 WL 31384 at *2 (S.S.A. 1982). If the evidence suggests that the claimant does not have a good reason for failing to follow the prescribed treatment, the claimant must be informed of that fact and of its effect on the eligibility for benefits. *Id.* at *5. The claimant

must be afforded an opportunity to comply with the prescribed treatment or to show "justifiable cause" for failing to do so.[1] *Id.*

Significantly, the procedures mandated by these regulations "only apply to claimants who would otherwise be disabled within the meaning of the Act." *Mack v. Comm'r of Social Security*, No. 10-12325, 2011 WL 989813 at *2 (11th Cir. Mar. 22, 2011), *quoting Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). As plaintiff concedes, the ALJ did not expressly find her disabled and then determine that she would be able to engage in substantial gainful activity had she followed a prescribed course of treatment. (*See* Plf. MSJ Br. at 8). Rather, the ALJ considered plaintiff's non-compliance with her medication regime in assessing her credibility. (*See* Tr. at 21). According to the judge:

> There is evidence that the claimant has not been entirely compliant in taking prescribed medications, *which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.* There are indications in the medical record that show that the claimant has not been entirely compliant with her medication regime. In fact, the medical evidence shows that the claimant ran out of medications and presented to the emergency room with exacerbated symptoms. In one instance the claimant was without her medications for two months. Furthermore, in August of 2008 it was noted the claimant ran out of her insulin five weeks before her presentation to Parkland Memorial Hospital which lead [sic] to an elevation of her blood sugar level to 765.
>
> The claimant cancelled or failed to show up for doctor appointments on a number of occasions. The claimant testified that her doctors were recommending injections for her neck pain and another surgery. However, the medical evidence of record shows no indication of these recommendations. In fact, the evidence shows the claimant did not show for her appointments with her neurosurgeon in 2008.

---

[1] The social security regulations list eight examples of "justifiable cause" for the failure to follow prescribed treatment, including whether the claimant is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. *See* SSR 82-59, 1982 WL 31384 at *4. At the administrative hearing, plaintiff testified that she cannot afford her medications. (*See* Tr. at 43).

(*Id.*) (internal citations omitted) (emphasis added). "A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility." *Robinson v. Astrue*, No. H-09-2497, 2010 WL 2606325at *8 (S.D. Tex. Jun. 28, 2010), *citing Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990); *see also Vega v. Comm'r of Social Security*, 358 Fed.Appx. 372, 375, 2009 WL 5031363 at *2 (3d Cir. Dec. 23, 2009) (ALJ may consider a claimant less credible if he or she fails to follow prescribed treatment plan without good reason); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (same). Because the ALJ considered plaintiff's failure to take prescribed medications only in assessing her credibility, and not in determining whether she would be able to work had she followed her medication regime, the judge was not required to follow the procedures set forth in 20 C.F.R. § 416.930 and SSR 82-59.[2]

## C.

Plaintiff further argues that the ALJ failed to recognize her hypertension, degenerative disc disease, and osteoarthritis as severe impairments which, in turn, adversely affected the determination of her residual functional capacity. (*See* Plf. MSJ Br. at 12-15). The social security regulations provide:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

---

[2] Even if the ALJ was required to give plaintiff an opportunity to explain the reasons for not taking her prescribed medications, remand is not required. In addition to her non-compliance, the ALJ discounted plaintiff's credibility based on evidence of substance abuse and conflicting statements regarding her sobriety. (*See* Tr. at 21). These other reasons for finding plaintiff not credible are supported by substantial evidence. (*See id.* at 571, 575, 585, 586). Thus, any error in this regard was harmless. *See, e.g. Lockwood v. Comm'r Social Security Admin.*, 397 Fed.Appx. 288, 290, 2010 WL 3258572 at *2 (9th Cir. Aug. 16, 2010), *pet. for cert. filed*, Mar. 7, 2011 (No. 10-1101) (ALJ's failure to discuss possible reasons for non-compliance was harmless where other reasons supporting credibility determination were supported by substantial evidence).

20 C.F.R. § 404.1520(c). Notwithstanding the plain language of this regulation, the Fifth Circuit has held that a literal application of section 404.1520(c) would exclude far more claimants than the statute intended. *See Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000), *citing Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). As a result, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101, *quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). If the ALJ does not set forth the correct standard by reference to *Stone* or by an express statement recognizing the proper construction of the regulation, the court must presume that an incorrect standard was used to evaluate the severity of plaintiff's impairments. *See Loza*, 219 F.3d at 393; *Stone*, 752 F.2d at 1106; *Eisenbach v. Apfel*, No. 7-99-CV-186-BC, 2001 WL 1041806 at *6 (N.D. Tex. Aug. 29, 2001). In this case, the hearing decision specifically cites *Stone* as well as the applicable regulations. (*See* Tr. at 15, 17). Therefore, the only question is whether substantial evidence exists to support the finding that plaintiff's other impairments are not severe. *See Musgrove v. Astrue*, No. 3-07-CV-0920-BD, 2009 WL 3816669 at *3 (N.D. Tex. Nov. 13, 2009).

In an attempt to establish the severity of her impairments, plaintiff relies on medical records which document findings of high blood pressure, degenerative disc disease, and osteoarthritis, as well as her own complaints of headaches, blurred vision, dizziness, fatigue, and pain. (*See* Plf. MSJ Br. at 13-14). However, the diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is "severe." *See Musgrove*, 2009 WL 3816669 at *3 (citing cases). Plaintiff bears the burden of proving that the diagnosed condition limits or interferes with her ability to engage in work related activities. *Id.*; *see also McClatchy v. Barnhart*, No. ASA-03-CA-0914-X, 2004 WL 2810100 at *6 (W.D. Tex. Dec. 3, 2004), *rec. adopted*, 2005 WL 1593395 (W.D. Tex. Jun.

30, 2005). In this case, plaintiff merely asks the court to assume that her high blood pressure, degenerative disc disease, and osteoarthritis caused limitations on her ability to work. (*See* Plf. MSJ Br. at 13-14). However, she fails to identify any particular limitation or point to any objective evidence that would support her contentions. The record contains no evidence that any treating or consulting physician placed any restrictions on plaintiff's ability to perform work activities because of these impairments. To the contrary, Dr. Patty Rowley, a medical consultant, opined that there was "no evidence of actually severe limitation in any area[.]" (*See* Tr. at 288).

Nor do plaintiff's complaints of headaches, blurred vision, dizziness, fatigue, and pain establish the severity of any additional impairment. The ALJ specifically rejected plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms as not credible. (*Id.* at 19). That conclusion is consistent with Dr. Rowley's opinion that the alleged limitations caused by plaintiff's symptoms are not fully supported by the medical evidence. (*Id.* at 292). Similarly, plaintiff's testimony that she requires a cane to walk does not establish the severity of any physical impairment, especially in light of contrary observations by medical sources that plaintiff sometimes ambulates without assistance. (*See id.* at 652, 730). In view of the complete lack of objective medical evidence establishing that any alleged additional impairment limits or interferes with plaintiff's ability to engage in work related activities, the ALJ was entitled to find that plaintiff's high blood pressure, degenerative disc disease, and osteoarthritis are not severe impairments. *See Henson v. Barnhart*, 373 F.Supp.2d 674, 683 (E.D. Tex. 2005) (affirming Step 2 determination where examining physician deemed impairment "not severe").

D.

Finally, plaintiff contends that the ALJ did not give proper weight to the opinions of her treating physicians and a consultative medical examiner who determined that she suffered from

serious mental impairments. In a letter dated January 18, 2008, Dr. David E. Faris, a licensed psychologist, observed that plaintiff was "severely depressed" and diagnosed her with major depressive disorder, recurrent, severe, with psychotic features. (*See* Tr. at 468). Dr. Faris also noted that, although plaintiff was taking medication for her depression, she was not responding to treatment, and that "the severity of [her] depression would prevent her from working at this time." (*Id.*). In his letter, Dr. Faris referenced a statement from plaintiff's primary physician, Dr. C. Egbuchunam, who indicated that plaintiff has a "'permanent/chronic' impairment from 'multiple medical issues.'" (*Id.*). Also in January 2008, Dr. Barbara Susanne Fletcher, a consultative medical examiner, interviewed plaintiff and diagnosed her with major depressive disorder, recurrent, severe, with psychotic features. (*Id.* at 362). Dr. Fletcher assessed plaintiff with a GAF score of 49,[3] indicating a serious impairment in social, occupational, or school functioning, including the inability to keep a job. (*Id.* at 362). The ALJ gave Dr. Faris's opinion "little weight," (*id.* at 21), did not explain the weight given to Dr. Fletcher's opinion, and did not mention Dr. Egbuchunam at all. Instead, the judge relied on the opinions of non-examining physicians employed by the State Disability Determination Services, who determined that plaintiff's impairments were not disabling. (*Id.*).

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2);

---

[3] GAF, or global assessment of functioning, is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir. 2001). The GAF scale ranges from 100, denoting superior functioning, to 1, indicating that the patient is in persistent danger of severely hurting herself or others, has a persistent inability to maintain minimal personal hygiene, or has engaged in a serious suicidal act with a clear expectation of death. *See Brown v. Barnhart*, 285 F.Supp.2d 919, 924 n. 7 (S.D. Tex. 2003), *citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") at 20 (4th ed. 1994).

*Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188 at *4 (S.S.A. 1996). *See also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

1. the physician's length of treatment of the claimant;

2. the physician's frequency of examination;

3. the nature and extent of the treatment relationship;

4. the support of the physician's opinion afforded by the medical evidence of record;

5. the consistency of the opinion with the record as a whole; and

6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

In his decision, the ALJ explained why he rejected Dr. Faris's opinion regarding plaintiff's ability to work:

> The undersigned has considered the opinion of David E. Faris, PhD. On January 18, 2008, Dr. Faris indicated the claimant was not responding to treatment and depression would prevent her from

working at that time. However, the claimant was seen by Dr. Faris
only on two occasions, on December 3, 2007 and January 16, 2008.
The undersigned finds Dr. Faris' opinion is inconsistent with the
medical evidence and therefore is given little weight.

(Tr. at 21). While terse, this explanation constitutes "good cause" for giving Dr. Faris's opinion limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in section 404.1527(d)(2), the regulations require only that the Commissioner "apply" the factors and articulate good reasons for the weight assigned to a treating source opinion. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ need not recite each factor as a litany in every case. *See Johnson v. Astrue*, No. 3-08-CV-1488-BD, 2010 WL 26469 at *4 (N.D. Tex. Jan. 4, 2010). Moreover, Dr. Faris's statement that "the severity of Ms. Hawkins' depression would prevent her from working at this time" is not a medical opinion and, thus, has no special significance. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to Commissioner). No error occurred in this regard.

The ALJ was not required to accept Dr. Fletcher's assessment of plaintiff's GAF score or explain the weight given to her opinions. First, an ALJ is not bound by the opinion of a non-treating medical source, like Dr. Fletcher. *See* SSR 96-6p, 1996 WL 374180 at *2 (S.S.A. 1996). While an ALJ who rejects the opinion of a treating physician must explain the reasons for doing so, the social security regulations merely require that the ALJ reflect that consideration was given to a medical consultant's opinion. *Id.*; *see also* 20 CFR §§ 404.1527 & 416.927; *Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801 at *2 (W.D. Tex. Nov. 5, 2004) (ALJ complies with regulations if resulting decision reflects that consideration was given to medical consultant's opinion). Here, the ALJ explained that plaintiff's low GAF score was inconsistent with Dr. Flethcher's other findings.

(*See* Tr. at 20). In particular, Dr. Fletcher reported that plaintiff was cooperative during her interview, that her responses were appropriate, and that it was easy to communicate with her. (*Id.* at 360-61). Dr. Fletcher further observed that plaintiff exhibited no evidence of thought disorder, looseness of association, circumstantiality, or tangentiality, and estimated plaintiff's intelligence to be in the average to low average range. (*Id.* at 361). This explanation satisfies the ALJ's duty under the regulations.[4]

Nor was the ALJ required to recontact Dr. Egbuchunam or further develop the record with regard to his opinion. Although an ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Conway v. Astrue*, No. 3-07-CV-0906-BD, 2008 WL 4865549 at *4 (N.D. Tex. Nov. 10, 2008), *quoting Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984), the duty to obtain medical records generally belongs to the claimant. *See Gonzalez v. Barnhart*, 51 Fed.Appx. 484, 2002 WL 31319423 at *1 (5th Cir. Oct. 4, 2002). The court will not reverse a hearing decision for failure to develop the record unless plaintiff shows that she was prejudiced thereby. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To establish prejudice, plaintiff must demonstrate that she "could and would have adduced evidence that might have altered the result." *Id.* In this case, plaintiff does not explain how consideration of Dr. Egbuchunam's statement that she had a "'permanent/chronic' impairment from 'multiple medical issues'" could or would have altered the ALJ's decision. Plaintiff presents no argument -- much less evidence -- to

---

[4] The court also notes that the GAF scale does not directly correlate to an individual's ability or inability to work. *Hill v. Astrue*, No. H-08-3160, 2009 WL 2901530 at *7 (S.D. Tex. Sept. 1, 2009), *citing* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000); *see also Nickerson v. Astrue*, No. 3-07-CV-0921-BD, 2009 WL 321298 at *6 (N.D. Tex. Feb. 6, 2009) (observing that "a low GAF score is not determinative of a disability"). Nothing in Dr. Fletcher's report suggests that plaintiff's GAF score was based on a perceived impairment in her ability to work. Thus, her score of 49, standing alone, is not evidence of a severe impairment that precludes plaintiff from working. *Hill*, 2009 WL 2901530 at *7; *see also Quaite v. Barnhart*, 312 F.Supp.2d 1195, 1200 (E.D. Mo. 2004) (in the absence of evidence indicating that examiner assigned a low GAF score to plaintiff because of a perceived inability to work, the score does not establish a severe impairment).

establish that any particular impairment or medical issue observed by Dr. Egbuchunam affected her ability to perform her past relevant work. Indeed, plaintiff concedes that there is no evidence in the record as to the content of Dr. Egbuchunam's opinions. (*See* Plf. MSJ Reply at 9). Without proof of prejudice, there is no basis for a remand. *See Newton*, 209 F.3d at 458 (remand required only if claimant shows prejudice resulting from ALJ's failure to request additional information); *Johnson v. Astrue*, No. 3-10-CV-0246-D, 2010 WL 4722275 at *8 (N.D. Tex. Nov. 22, 2010) (failure to obtain pertinent records from treating physician, by itself, is insufficient to demonstrate reversible error).

## CONCLUSION

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: March 25, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE